**UNITED STATES of America**

v.

**Thomas F. JOHNSON, Frank W. Boykin, J. Kenneth Edlin and William L. Robinson.**

**Cr. No. 26067.**

United States District Court
D. Maryland.

Feb. 28, 1963.

Joseph D. Tydings, U. S. Atty., J. Hardin Marion, III, Asst. U. S. Atty., Arnold M. Weiner, Sp. Asst. U. S. Atty., Baltimore, Md., and Arthur L. Burnett,

Atty., Criminal Div., Dept. of Justice, Washington, D. C., for the United States.

George Cochran Doub, Baltimore, Md. (Herbert H. Hubbard and Ronald E. Creamer, Baltimore, Md., on brief), for Johnson.

Edward Bennett Williams and Harold Ungar, Washington, D. C., for Boykin.

Edward L. Genn, Washington, D. C., for Edlin.

William L. Robinson, pro se.

THOMSEN, Chief Judge.

Defendants in this eight-count indictment found by the Grand Jury for the District of Maryland are: Thomas F. Johnson and Frank W. Boykin, who at all times mentioned in the indictment were Members of the House of Representatives of the United States from Maryland and Alabama respectively; J. Kenneth Edlin, who is alleged to have dominated and controlled certain savings and loan associations and land companies, which are named as co-conspirators but not indicted; and William L. Robinson, a lawyer, who is alleged to have been a director and officer of those associations and companies.[1]

The First Count charges a conspiracy, in violation of 18 U.S.C.A. § 371,[2] among defendants and others "to defraud the United States of and concerning its gov-ernmental functions and rights", in specified particulars summarized below under the heading "The Indictment". Each of the seven other counts charges that, in violation of 18 U.S.C.A. § 281 and 2,[3] Johnson, acting in concert with and aided and abetted by the other defendants, directly or indirectly received compensation from Edlin and Robinson for services rendered and to be rendered by Johnson before the Department of Justice in relation to a charge, accusation and indictment against Edlin et al.

Each defendant has filed a number of motions, or adopted those filed by other defendants; they will be discussed under the following headings:

I. Motions to Dismiss the First Count

    A. Jurisdiction—Art. 1, sec. 6, cl. 1 of the Constitution

    B. Duplicity

    C. Vagueness—Improper Use of Charge of Conspiracy to Defraud the United States.

II. Motions to Dismiss the Substantive Counts (Second to Eighth)

    A. Venue

    B. Claimed Failure to Charge an Offense Against the United States

    C. Payor as Aider and Abettor

---

1. Boykin is alleged to have dominated and controlled a co-conspirator, Tensaw Land and Timber Company.

2. "§ 371. *Conspiracy to commit offense or to defraud United States*

    "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both. * * *"

3. "281. *Compensation to Members of Congress, officers and others in matters affecting the Government*

    "Whoever, being a Member of or Delegate to Congress, or a Resident Commissioner, either before or after he has quali-fied, or the head of a department, or other officer or employee of the United States or any department or agency thereof, directly or indirectly receives or agrees to receive, any compensation for any services rendered or to be rendered, either by himself or another, in relation to any proceeding, contract, claim, controversy, charge, accusation, arrest, or other matter in which the United States is a party or directly or indirectly interested, before any department, agency, court martial, officer, or any civil, military, or naval commission, shall be fined not more than $10,000 or imprisoned not more than two years, or both; and shall be incapable of holding any office of honor, trust, or profit under the United States. * * *"

    See also 1962 Pocket Part, 18 U.S.C.A. § 281.

III. Motions for Discovery
  A. Grand Jury Testimony
  B. Other

*The Indictment*

1. The First Count, the conspiracy count, after identifying defendants and their alleged co-conspirators and referring to an indictment against Edlin et al. in the District of Maryland, charges in paragraph 14 that from on or about April 1, 1960, and continuously thereafter until on or about December 31, 1961, defendants and their co-conspirators conspired in Maryland and elsewhere to defraud the United States "of and concerning its governmental functions and rights", described in four sub-paragraphs as: (a) its right to have the business of the Department of Justice conducted free from improper and undue influence; (b) its right to have the personnel of that Department free to transact its official business unhindered by the exercise upon them of corrupt, unlawful, improper and undue pressure and influence; (c) its right to have the duties of Johnson and Boykin in their official capacities as Members of the House performed free from corruption resulting from their personal and pecuniary interest in the success of Edlin et al. in attempting to persuade the Department of Justice to cause the postponement of the trial and the eventual dismissal of the indictment against Edlin et al; and (d) its right not to be deprived of the faithful services of Johnson and Boykin in their official capacities as Members of the House uninfluenced by corruption and by payments of money and other valuable considerations to them by the other defendants and co-conspirators as compensation for services rendered and to be rendered by Johnson in behalf of the other defendants and co-conspirators in relation to matters pending in the House, and for services rendered and to be rendered by Johnson and Boykin before the Department of Justice in relation to proceedings, charges and accusations in which the United States is a party and directly interested.

The First Count then sets out in paragraphs 15 to 25 that it was a part of the conspiracy: (para. 15) that Johnson should, at the request of Edlin and Robinson, render services for compensation to them and their co-conspirators, namely, the making of a speech on the floor of the House defending "the operations of Maryland's 'independent' savings and loan associations, the financial stability and solvency thereof, and the reliability and integrity of the 'commercial insurance' on investments made by said 'independent' savings and loan associations, on the floor of the House of Representatives"; (para. 16) that Johnson, Edlin and Robinson would cause to be reprinted 50,000 copies of said speech for distribution to prospective depositors in the aforesaid savings and loan associations, to members of the General Assembly of Maryland, and to others; and (paras. 17–25) that Johnson and Boykin should at the request of the other defendants and their co-conspirators render specified services for compensation in relation to the aforesaid indictment, bringing the prestige, weight and influence of their official position to bear upon the officials of the Department of Justice to obtain decisions and actions beneficial to defendants and their co-conspirators, particularly the postponement of the trial and the eventual dismissal of the indictment.

Seventy-five overt acts to effect the objects of the alleged conspiracy are specified. Reference is made to 18 U.S. C.A. § 371.

2. The Second Count charges that on or about April 3, 1961, in the District of Maryland, Johnson, being then a Member of Congress, acting jointly and in concert with and aided and abetted by the other defendants, unlawfully, wilfully and corruptly received, directly or indirectly, from Edlin and Robinson, compensation in the amount of $800.00, to wit, the proceeds of a bank check drawn by Robinson on a certain bank in Miami, Florida, which was "deposited in, credited to and final payment in the sum of $800.00 made thereon to the account of" Johnson at the Exchange and Savings

Bank, Berlin, Maryland, the date and place of the receipt of said check by Johnson being to the Grand Jurors unknown, for services rendered and to be rendered by Johnson before the Department of Justice in relation to the proceeding, charge and accusation referred to in the First Count. Reference is made to 18 U.S.C.A. §§ 281 and 2.

3, 4, 5, 6. The Third, Fourth, Fifth and Sixth Counts are similar to the Second Count except for dates and amounts and the allegation that the checks referred to in those four counts were drawn by one of the alleged co-conspirators on the National Bank of Bethesda-Chevy Chase, Bethesda, Maryland.

7, 8. The Seventh and Eighth Counts are similar to the Second Count except for dates and amounts of the checks.

## I.

*Motions to Dismiss the First Count*

### A.

#### Jurisdiction—Art. 1, Sec. 6, Cl. 1 of Constitution

Johnson, Edlin and Robinson have moved [4] to dismiss the First Count for lack of jurisdiction on the ground that the prosecution of the offense charged therein is barred by Art. 1, Sec. 6, Cl. 1 of the Constitution, which provides:

"The Senators and Representatives shall receive a compensation for their Services, to be ascertained by Law, and paid out of the Treasury of the United States. They shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses and going to and returning from the same; and for any Speech or Debate in either House they shall not be questioned in any other Place."

Defendants do not cite any authority which holds that the quoted clause bars

the prosecution of a Member of Congress for accepting money for making a speech on the floor of the House of which he is a member, nor for participating in a conspiracy of which that is an incident. They rely on the doctrine of the separation of powers, on the importance thereto of the privilege granted by the clause, and on the statements contained in opinions dealing with civil actions rather than criminal prosecutions. The importance of the doctrine and of the privilege is universally recognized. The question here, however, is the scope of the prohibition contained in the clause.

The historical background of the clause is reviewed at length in Kilbourn v. Thompson, 103 U.S. 168, 201 et seq., 26 L.Ed. 377, and in Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019; that discussion need not be repeated here.

Both of those cases were civil actions, one for false arrest and the other for deprivation of civil rights. They hold that the clause should be liberally construed to cover voting and other official action by legislators, as well as speeches and debates. Other cases hold that the question whether a matter is before the House should also be liberally construed. See, e. g., Cochran v. Couzens, 59 App. D.C. 374, 42 F.2d 783; Barsky v. United States, 83 U.S.App.D.C. 127, 167 F.2d 241. Defendants rely heavily on the following passage in Coffin v. Coffin, 4 Mass. 1 (a civil action for slander), construing the Massachusetts Constitution: "These privileges are thus secured not with the intention of protecting the members against prosecutions for their own benefit, but to support the rights of the people, by enabling their representatives to execute the functions of their office without fear of prosecutions, civil or criminal. I therefore think that the article ought not to be construed strictly but liberally, that the full design of it may be answered. I will not confine it to delivering an opinion, uttering a speech,

---

4. Boykin has not filed a similar motion.

or haranguing in debate, but will extend it to the giving of a vote, to the making of a written report and to every other act resulting from the nature and in the execution of the office. And I will define the article as securing to every member exemption from prosecution for everything said or done by him as a representative in the exercise of the functions of that office. * * * "

That passage from Coffin was quoted with approval in Kilbourn, 103 U.S. at 204, 26 L.Ed. 377. It should be noted, however, that the opinion in Kilbourn went on to say: "It is not necessary to decide here that there may not be things done, in the one House or the other, of an extraordinary character, for which the members who take part in the act may be held legally responsible." 103 U.S. at 204, 26 L.Ed. 377. The caveat was reiterated by the Supreme Court in Tenney, 341 U.S. at 378–379, 71 S.Ct. at 789–790, 95 L.Ed. 1019.

■ Without question, the clause should be liberally construed to accomplish its purpose—the freedom of legislators from fear of prosecutions, whether civil or criminal, for words spoken, or votes cast, or actions taken in the pursuit of their lawful functions. But neither the statutes, the decisions, nor the text writers suggest that the purpose of the clause would be aided by a construction which would shield a legislator from prosecution for bribery or from prosecution for a conspiracy of the nature charged herein.

Congress has repeatedly enacted statutes providing for criminal prosecution in the courts of a Member of Congress for bribery and graft, including the taking of money for his action, vote or decision. See 18 U.S.C.A., 1950 ed., sec. 201 et seq., especially sec. 205 and sec. 281. See also 1962 supp., sec. 201 et seq., especially sec. 203. The debates in Congress when the first of such acts was adopted—unanimously—do not show that anyone questioned its constitutionality.[5] Nor does it appear that any question of constitutionality was raised when Congress adopted the statute which was in effect in 1961 or the present statutes which were adopted in 1962.

The Supreme Court pointed out in Tenney, 341 U.S. at 375, n. 5, 71 S.Ct. at 788, 95 L.Ed. 1019, that provisions generally similar to Art. 1, sec. 6, cl. 1 of the United States Constitution appear in the constitutions of most of the states. Practically all of those states also have statutes making the acceptance by legislators of compensation from private individuals a criminal offense.[6] It does not appear that any prosecution under

5. Cong.Globe, 37 Cong., 2d Sess., pp. 3260, 3261, 3262 (1862). See also 8 Cong. Deb. 2511 et seq. (1832) dealing with the assault by General Sam Houston on a fellow Member of Congress.

6. See Ala.Code tit. 14, ch. 21, sec. 72 (1958), Ala.Code tit. 14, ch. 21, sec. 64 (1958); Ariz.Rev.Stat.Ann., ch. 2, sec. 13–286 (1956); Ark.Stat.Ann. ch. 9, sec. 41–901 (1947); Colo.Rev.Stat.Ann. art. 7, sec. 40–7–5 (1953), Colo.Rev.Stat.Ann. art. 7, sec. 40–7–7 (1953); Conn.Gen. Stat.Ann. ch. 942, sec. 53–149 (1960); Ga.Code Ann. ch. 26–41, sec. 26–4102 (1953), Ga.Code Ann. ch. 26–50, sec. 26–5023 (Cum.Supp.1961), Ga.Code Ann. ch. 26–42, sec. 26–4203 (1953), Ga.Code Ann. ch. 26–42, sec. 26–4201 (1953); Idaho Code ch. 47, sec. 18–4704 (1947); Ill. Stat.Ann. ch. 38, sec. 78 (1935), Ill.Stat. Ann. ch. 38, sec. 79 (1935); Ind.Stat. Ann. ch. 6, sec. 10–601 (1956); Kan. Gen.Stat.Ann. ch. 21, sec. 21–825 (1949);

Ky.Stat.Rev. ch. 432, sec. 432.350 (1955); La.Stat.Rev. ch. 1, sec. 14.118 (1951); Me.Stat.Rev. ch. 135, sec. 5 (1954); Md. Code Ann. art. 27, sec. 23 (1957); Mass. Laws Ann. ch. 268, sec. 8 (1956); Mich. Stat.Ann. ch. 286a, sec. 28.313 (1938), Comp.Laws 1948, § 750.118; Minn.Stat. Ann. ch. 613, sec. 613.05 (1947), Minn. Stat.Ann. ch. 613, sec. 613.06 (1947); Vernon's Mo.Stat.Ann. ch. 558, sec. 558.-020 (1953); Mont.Rev.Code ch. 29, sec. 94–2906 (1947); Neb.Stat.Rev. ch. 28, sec. 28–706 (1943); N.H.Stat.Rev.Ann. ch. 587, sec. 587:27 (1955); N.J.Stat. Ann. ch. 93, sec. 2A:93–2 (1939); N. M.Stat.Ann. art. 8, sec. 40–8–1 (1953); N.M.Stat.Ann. art. 8, sec. 40–8–3 (1953); N.Y.Penal Code, sec. 1328, McKinney's Consol.Laws, c. 40; N.D.Code Ann. ch. 12–09, sec. 12–09–09; Ohio Rev.Code Ann. ch. 2917, sec. 2917.01 (1953); Okla. Stat.Ann. tit. 21, ch. 7, sec. 309 (1951); Ore.Stat.Rev. ch. 162, sec. 162.230 (1959);

any of those statutes has ever been held to violate the constitutional privilege. Indeed, it does not appear that the question has ever been raised. See People v. Logie, 321 Mich. 303, 32 N.W.2d 458; People v. Hammond, 132 Mich. 422, 93 N.W. 1084; State v. Burns, 238 Mo.App. 220, 177 S.W.2d 909; State v. Sullivan, 110 Mo.App. 75, 84 S.W. 105. See also Hemans v. United States, 6 Cir., 163 F.2d 228.

Leading text writers also indicate that the purpose of the provision is to prevent the prosecution of any action, civil or criminal, for words spoken, for libel or slander, and historically for treason or sedition.[7] No authority has been cited or found which suggests that the clause was intended to bar criminal prosecutions based on the acceptance of money for speeches, votes or other legislative acts.

▌ It appears from the foregoing discussion that the prosecution of a Member of Congress for receiving money from a private person for making a speech on the floor of the House would not be barred by Art. 1, sec. 6, cl. 1 of the Constitution. *A fortiori*, the prosecution of the offense charged in Count One of the present indictment is not barred. The making of the speech was but an incident of the conspiracy charged, which is alleged to have included the reprinting by Johnson, Edlin and Robinson of 50,000 copies of the speech for distribution to prospective depositors in the two savings and loan associations named as co-conspirators, among others, as well as various actions by the alleged

conspirators in connection with the indictment pending against Edlin, et al. To hold Count One of the present indictment barred by the privilege would subvert rather than advance the purpose for which the privilege exists—the independence of the legislator in the fulfillment of his public trust. II James Wilson's Works 156 (1804); Hemans, 163 F.2d at 234; United States v. Glasser, 7 Cir., 116 F.2d 690, 696, 315 U.S. 60, 66, 62 S.Ct. 457, 86 L.Ed. 680; United States v. Manton, 2 Cir., 107 F.2d 834, 839.

The motions to dismiss Count 1 for lack of jurisdiction are hereby denied.

### B.

#### Duplicity

▌ Defendants' motions to dismiss the First Count for duplicity are without merit. They admit that one conspiracy may have two or more objects, but they contend that the First Count charges two conspiracies, one involving the preparation, making and distribution of a speech before the House of Representatives and one involving the services of Johnson before the Department of Justice in connection with the indictment against Edlin et al. The Court does not so construe the First Count. It charges a single conspiracy to defraud the United States of and concerning its governmental functions and rights which are set out in subparagraphs (a), (b), (c) and (d) of paragraph 14, and charges that the conspiracy had various objects or parts, which, together with the means used to accomplish them, are set out in

---

Pa.Stat.Ann. tit. 18, art. 3, sec. 4303 (1939); R.I.Gen.Laws ch. 7, sec. 11–7–3 (1956); S.D.Code ch. 13.10, sec. 13.1009 (1939); Tenn.Code Ann. ch. 8, sec. 39–802 (1955); Tex.Penal Code art. 159 (1925), Vernon's Ann.P.C. art. 159; Utah Code Ann. art. 2, sec. 76–28–18 (1953); Vt.Stat.Ann. tit. 13, ch. 21, sec. 1102 (1958); Va.Code ch. 6, art. 2, sec. 18.1–279 (1950); Wash.Rev.Code Ann. ch. 9.18, sec. 9.18.020; W.Va.Code art. 5, sec. 6003 (1961); Wis.Stat.Ann. ch. 946, sec. 946.10 (1957); Wyo.Stat. ch. 8, sec. 6–156 (1957). Arkansas, Mary-

land, Pennsylvania and Texas have provisions in their Constitutions making acceptance by a public official of compensation to influence him in his official capacity a criminal offense. See Ark.Const. Art. V, sec. 35; Md.Const. Art. III, sec. 50; Pa.Const. Art. 3, sec. 29; and Tex.Const. Art. 16, sec. 41, Vernon's Ann.St.

7. 2 Cooley, Constitutional Limitations, p. 929 (8th ed. 1927); 1 Tucker, Constitution, sec. 207 (1899); 1 Willoughby, Constitution of the United States, sec. 342 (2d ed. 1929).

paragraphs 15 to 25 of Count One. The parts or objects of the conspiracy so charged all deal with the general subject of Edlin's connection with two savings and loan associations operating in Maryland named as co-conspirators herein, with the commercial insurance of the investments of such associations, and with the indictment against Edlin and others on charges arising out of the operation of the two associations. All of the services alleged to have been rendered by Johnson, both in his speech and in his dealings with the Department of Justice, were in connection with those matters.

What was said in May v. United States, 84 U.S.App.D.C. 233, 175 F.2d 994, 1002, applies here.[8] See also Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489; Frohwerk v. United States, 249 U.S. 204, 210, 39 S.Ct. 249, 63 L.Ed. 561; Travis v. United States, 10 Cir., 247 F.2d 130; United States v. Lennon, 2 Cir., 246 F.2d 24, cert. den. 355 U.S. 836, 78 S.Ct. 60, 2 L.Ed.2d 48; United States v. Manton, 2 Cir., 107 F.2d 834.

■ If the evidence fails to sustain the charge of a single conspiracy, the point can be raised by an appropriate motion. Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557; Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314.

### C.

#### Vagueness—Improper Use of Charge of Conspiracy to Defraud the United States

Johnson has moved to dismiss the First Count on the ground that it violates the Fifth and Sixth Amendments to the Constitution by depriving him of his right to be informed of the nature and cause of the accusation, by charging him with participation in a conspiracy, the purposes of which are so vague, general and indefinite that he is not apprised of the offense charged, is unable to prepare his defense, and may not be able to plead former jeopardy in the event of a second prosecution. He further contends that a count charging the second alternative of sec. 371[9]—a conspiracy to defraud the United States—may not be used when the acts charged amount to substantive offenses in violation of other statutes.

■ Counsel for Johnson first refers to the criticism which the Supreme Court and other federal courts have leveled at the indiscriminate use of conspiracy indictments. See, e. g., Kotteakos v. United States, 328 U.S. 750, 772, 66 S.Ct. 1239, 90 L.Ed. 1557; Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790; Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931; United States v. Falcone, 2 Cir., 109 F.2d 579. This Court is aware of that criticism, and is also aware that the Supreme Court has not forbidden the use of such an indictment in a proper case. Under the authorities cited to support this Court's conclusion on the various points discussed herein, the inclusion of the conspiracy count in the present indictment was not improper.

Counsel then argues that the original of sec. 371, which proscribes conspiracies "either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose", was passed shortly after the Civil War primarily to deal with tax violations. He criticizes the federal judiciary for broadening the classes of cases to which the statute has been held applicable; see Haas v. Henkel, 216 U.S. 462, 476–481, 30 S.Ct. 249, 54 L.Ed. 569, Hammerschmidt v. United States, 265 U.S. 182, 44 S.Ct. 511, 68 L.Ed. 968, and numerous cases in

---

8. The basis for the dissent by Judge Stephens on this point in May does not exist in the instant case. Count I of the indictment in May charged a conspiracy both to violate old sec. 203 and to defraud the United States. The conspiracy charged in the instant case is a conspiracy to defraud the United States; a purpose to violate sec. 281 is not charged as part of the conspiracy.

9. See note 2, above.

the inferior federal courts, such as United States v. Manton, 2 Cir., 107 F.2d 834, May v. United States, 84 U.S.App. D.C. 233, 175 F.2d 994, and United States v. Bowles, D.Me., 183 F.Supp. 237. He says: "Although the effort of the Supreme Court in the Hammerschmidt case to restrict the language inadvertently used in Haas was commendable, the new definition of 'defrauding' was still too broad." The definition in Hammerschmidt of which counsel complains read as follows: "To conspire to defraud the United States means primarily to cheat the Government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest. It is not necessary that the Government shall be subjected to property or pecuniary loss by the fraud, but only that its legitimate official action and purpose shall be defeated by misrepresentation, chicane or the overreaching of those charged with carrying out the governmental intention." 265 U.S. at 188, 44 S.Ct. at 512, 68 L.Ed. 968. This language has been construed in Manton, May, Bowles, and other cases to permit the prosecution of counts generally similar to the First Count in the indictment under consideration. Counsel cites an article, 68 Yale L.J. 405, criticizing the use of counts charging a conspiracy to defraud the United States by dishonest means, and suggesting that Congress should repeal or amend the statute. Nevertheless, this Court should follow the law as laid down by the Supreme Court and other federal courts.

■ The argument that the alleged objects of the conspiracy are so vague, broad and indefinite that they give defendants no adequate notice of the offense charged, misconstrues the nature and objects of the conspiracy. The First Count charges, in paragraph 14, a conspiracy to defraud the United States of and concerning its governmental functions and rights hereinafter described.

Subparagraphs (a), (b), (c) and (d), which immediately follow, state the rights referred to.[10] They are not, as Johnson's brief assumes, purposes of the conspiracy. The purposes, parts or objects of the conspiracy are set out in paragraphs 15 to 25 of the First Count, together with the means to be used to accomplish the purposes. Thereafter 75 overt acts are alleged, as having been done and performed in pursuance of and in order to effect the objects of the conspiracy. The government has conceded what appears to me required by the allegations of the First Count, that it will not attempt to prove any purposes and objects of the conspiracy except those set out in paragraphs 15 to 25. So construed, as I think it must be, the First Count gives defendants adequate notice of the offense charged, more than sufficient to meet the requirements of the Fifth and Sixth Amendments and of Rule 7(c), F.R.Crim.P., 18 U.S.C.A.

It is true that the First Count does not allege a conspiracy "to cheat the Government out of property or money", and that it does not *in haec verba* allege interference with or obstruction of lawful governmental functions "by deceit, craft or trickery, or at least by means that are dishonest". But it does not follow that the charge fails to meet the test laid down in Hammerschmidt. Paragraphs 15 to 25 contain allegations of the means used to defraud the United States of its rights enumerated in subparagraphs (a), (b), (c) and (d) of paragraph 14. This Court believes that the means charged are dishonest means. See discussion of the Hammerschmidt rule in Bowles, 183 F.Supp. at 245–247, and the discussion under II. B., below.

■ Finally, counsel contends that a charge of a conspiracy to defraud may not be made when the indictment as a whole shows that violations of specific statutes are involved. He contends that such a prosecution must be brought for the violation of the specific statutes or for a conspiracy to violate those statutes

10. See summary of those paragraphs under "The Indictment" supra.

under the first alternative of sec. 371. No authority is cited to support this proposition, which is at odds with the prevailing practice, and would unreasonably restrict the preparation of an indictment for conspiracy where repeated violations of several statutes by several persons are incidents of a single broad conspiracy to defraud the United States of its governmental functions and rights. If the government fails to prove the conspiracy charged, defendants will not be without remedy.

\*

All motions to dismiss the First Count are hereby denied, without prejudice to the rights of defendants to raise similar points by motions at the conclusion of the government's case or at the close of all the evidence.

## II.

### Motions to Dismiss the Second to Eighth Counts

#### A.

#### Venue

Johnson and Boykin have moved to dismiss Counts 2 through 8 of the indictment for lack of venue, on the ground that those Counts fail to allege that any violation of 18 U.S.C.A. § 281 occurred within the District of Maryland. Robinson has adopted these motions.

■ A prosecution under sec. 281 [11] may be brought only in the District where the Congressman or other officer rendered the services or agreed to render the services, or where he received the compensation or agreed to receive the compensation. In none of the substantive counts is it charged that Johnson rendered any services or agreed to render any services in the District of Maryland, nor is it alleged that Johnson agreed in Maryland to receive any compensation. Accordingly, the jurisdiction of this Court with respect to those counts must rest on a sufficient allegation that Johnson received compensation within the District of Maryland.

Each substantive count (Second through Eighth) charges that in the District of Maryland, Johnson, a duly elected Member of Congress, acting jointly and in concert with, and aided and abetted by the other defendants, unlawfully, wilfully, knowingly and corruptly did receive, directly and indirectly, compensation in a specified amount, to wit, the proceeds of a bank check payable to the order of Johnson and Johnson, which was deposited in, credited to and final payment made thereon to the account of the said Thomas F. Johnson at the Exchange and Savings Bank, Berlin, Maryland, the date and place of the receipt of the check by the defendant Thomas F. Johnson being to the Grand Jurors unknown. In the Third, Fourth, Fifth and Sixth Counts, the checks are alleged to have been drawn on the National Bank of Bethesda-Chevy Chase, Bethesda, Maryland; in the Second, Seventh and Eighth Counts, the checks are alleged to have been drawn on the Industrial National Bank of Miami, Florida.

Defendants have taken the position that compensation is received in the District in which a check is delivered and only in that District; that the place where a check is cashed or deposited for collection and the place where it is ultimately paid are immaterial; and that since it is alleged that the place where Johnson received the check is unknown to the Grand Jurors, the indictment fails to allege venue in this District.

The government contends that compensation was received in each instance at the place where the proceeds of the checks were made available to Johnson; that each substantive count alleges that Johnson received compensation in the State of Maryland in a specified amount, to wit, the proceeds of a specified check which was deposited in, credited to and final payment made thereon to Johnson's account at a specified bank in Berlin,

11. Set out in note 3 supra.

Maryland; and, therefore, that the receipt of compensation in the State of Maryland has been sufficiently alleged. As an alternative contention, the government argues that when payment is made by check, the receipt of compensation in violation of sec. 281 is a continuing offense which does not end until the proceeds of the check have been made fully available to the offender; thus, there may be venue in more than one District if the check is deposited in one District and paid in another.

The meaning of the words "receives * * * compensation", as they are used in this section, was discussed by the Supreme Court in Burton v. United States, 196 U.S. 283, 25 S.Ct. 243, 49 L.Ed. 482. Burton was a Congressman, who was charged in certain counts of an indictment with illegally receiving compensation in the form of checks drawn on a bank in St. Louis, Missouri. The indictment, which was brought in the Eastern District of Missouri, charged both that Burton received the checks and that the checks were paid in that District. The evidence showed that the checks had in fact been received in the District of Columbia and deposited there in the Riggs Bank, which had given immediate credit to Burton and had then sent the checks to Missouri for collection. The trial judge left to the jury the decision where compensation had been received. The Supreme Court held that under the undisputed facts and the applicable banking law the Riggs Bank was not acting as Burton's agent in collecting those checks, but that title to the checks passed in the District of Columbia to the Riggs Bank, which in contemplation of law had purchased the checks; and that venue with respect to those counts could not be laid in Missouri, where the checks were ultimately paid. The Court also held that it was not a case where an offense was commenced in one district and completed in another, rejecting the contention of the government that the offense had begun when the checks were mailed from Missouri to the District of Columbia.

Since in Burton the checks were physically delivered to the Congressman in the District of Columbia and immediate credit thereon given to him by the Riggs Bank in that District, defendants argue that Burton is no authority for the proposition that venue lies where the checks were deposited and credit given rather than where they were physically delivered. However, the entire discussion of venue in the opinion of the Supreme Court was devoted to the law and facts with respect to the deposit of the checks, the credit given and the payment of the checks. Mr. Justice Harlan dissented only because he felt that Burton had received at St. Louis compensation for his services, since the checks were paid there to his representative, the collecting bank. The government rightly argues that if the place of physical delivery of the checks were the only place where venue might be laid, the entire discussion in Burton would have been beside the point. In this contention the government is supported by the following dictum of Judge Learned Hand in United States v. Lotsch, 2 Cir., 102 F.2d 35, 36: "Next, it is argued that the crime was committed when Lotsch took the cheques—that is in Manhattan—and not when he cashed them in Brooklyn. That was indeed held in Commonwealth v. Donovan, 170 Mass. 228, 49 N.E. 104; but State v. Walls, 54 Ind. 561, is to the contrary, and so is United States v. Green, D.C., 136 F. 618. Burton v. United States, 196 U.S. 283, 25 S.Ct. 243, 49 L.Ed. 482, favors the Indiana rule, at least by implication, because, if the receipt of the cheque be the offence, that would have been a short answer to the prosecution, for Burton concededly got the cheque in Washington."

The controlling words in sec. 281, "receives * * * compensation", are different from the controlling words in the various sections of Chapter 11 of Title 18, sec. 201 et seq., as they have read from time to time, which refer variously to the receipt of "money", "checks" or "things of value", or use other expressions.

The case of United States v. Green, N.D.N.Y., 136 F. 618, cited by Judge Hand, construed a bribery statute which made it an offense to tender "[a]ny contract, undertaking, obligation, gratuity, or security for the payment of money, or for the delivery or conveyance of anything of value." The Court held that a check was not a "thing of value". Congress then amended the statute there involved by adding the word "check" before the word "contract". See Reviser's note to 18 U.S.C.A. § 201. Defendants argue that since no similar amendment was made to what is now sec. 281, it must be assumed that Congress felt the term compensation included checks, even though they were not "things of value", and, therefore, that no amendment to sec. 281 was necessary. This argument ignores the probability that if Congress gave any consideration to sec. 281 at that time, it was satisfied with the construction given to that section by the Supreme Court in Burton.[12]

The question presented by the motions presently under consideration is whether venue lies (a) where the checks were physically delivered to Johnson; (b) where the proceeds of the checks were credited to his account, either at the time of deposit or after they had been collected; (c) where the check was paid by the drawee bank; or (d) in two or more of those places.

■ Questions of venue are more than matters of procedure; they raise issues of public policy in the light of which legislation must be construed. Travis v. United States, 364 U.S. 631, 634, 81 S.Ct. 358, 5 L.Ed.2d 340. When venue is based solely on the receipt of compensation, there are some arguments in favor of construing the statute to mean that compensation is received at

the place where a check is delivered. But this Court must be guided by the opinion in Burton, which, as Judge Learned Hand said in Lotsch, implies that the crime is committed where the check is converted into money by the Congressman, not where it is physically delivered to him.

The application of Burton to the case at bar is made difficult by the circumstances that the Maryland banking law is different from the banking law in effect in the District of Columbia at the time of Burton, as found by the majority opinion therein. Maryland has enacted the Bank Collection Code, Art. 11, secs. 118–134, Anno.Code of Md., 1957 ed. Sec. 119 thereof reads:

"Except as otherwise provided by agreement and except as to subsequent holders of a negotiable instrument payable to bearer or endorsed specially or in blank, where an item is deposited or received for collection, the bank of deposit shall be agent of the depositor for its collection and each subsequent collecting bank shall be subagent of the depositor but shall be authorized to follow the instructions of its immediate forwarding bank and any credit given by any such agent or subagent bank therefor shall be revocable until such time as the proceeds are received in actual money or an unconditional credit given on the books of another bank, which such agent has requested or accepted. Where any such bank allows any revocable credit for an item to be withdrawn, such agency relation shall nevertheless continue except the bank shall have all the rights of an owner thereof against prior and subsequent parties to the extent of the amount withdrawn."

12. The point is not clarified by the 1962 amendments, which, apparently ignoring the decision in Green, use the single expression "anything of value" in the new bribery statute, sec. 201, although various other expressions are used in succeeding sections of ch. 11, including new secs.

203–209. The word "compensation" has been carried over from sec. 281 to sec. 203 so far as Members of Congress and certain other officials are concerned. See sec. 2 of Pub.L. 87–849, Oct. 23, 1962, 78 Stat. 1126; 18 U.S.C.A., 1962 Pocket Part, secs. 201, 203 et seq., 281.

Since the indictment alleges that Johnson received in the District of Maryland "compensation * * * to wit, the proceeds of" the specified checks, which are alleged to have been "deposited in, credited to, and final payment * * * made thereon to the account of the said Thomas F. Johnson" at a specified bank in Berlin, Maryland, it appears that Johnson is charged with having received compensation in Maryland, within the Burton opinion.

What the evidence may show is another matter.[13] If the facts show that the Berlin bank was acting as Johnson's agent in collecting the checks, and that the circumstances were such that under the applicable law the checks should be considered as having been converted into money when and where they were paid by the drawee banks, venue would lie in the District of Maryland with respect to the four counts dealing with checks drawn on the Bethesda, Maryland, bank (Counts, 3, 4, 5 and 6) and not with respect to the three counts dealing with the checks drawn on the Miami, Florida, bank (Counts, 2, 7 and 8) unless the offense can be considered as having been begun in one District and completed in another, within the meaning of 18 U.S. C.A. § 3237.[14]

The government argues that it may be so considered, citing Benson v. Henkel, 198 U.S. 1, 25 S.Ct. 569, 49 L.Ed. 919. In that case the evidence showed that the defendant mailed cash from San Francisco, California, to an official of the Department of the Interior at Washington, D. C., and the defendant, who was indicted for bribery in the District of Columbia, challenged venue. The Court treated the case as covered by sec. 731, which provided, like present sec. 3237, that when an offense is begun in one District and completed in another it shall be deemed to have been committed in either, and may be tried in either, as though it had been wholly committed therein. In the instant case, the government argues, the receipt of compensation may be regarded as having been begun when Johnson deposited the checks (or even where they were physically delivered to him), but was not completed until the checks were finally cashed, so that venue may properly be laid either in the District where the checks were deposited or in the District where they were cashed. It is true that in Burton the Court said: "This is not a case of the commencement of a crime in one district and its completion in another, so that under the statute the court in either

---

13. The government states the evidence will show that each check specified in Counts 2 through 8 was endorsed by Johnson in blank, that immediately upon the deposit of each such check Johnson was given credit on his account upon which he could draw, and that the credit was never revoked. This statement cannot change the effect of the indictment, but it is not inconsistent therewith. If the evidence shows that the checks were endorsed in blank, the following provision of sec. 121 will have to be considered: "Where a deposited item is * * * indorsed by the depositor in blank * * * the fact that such item is so * * * indorsed shall not change the relation of agent of the bank of deposit to the depositor, but the subsequent holders shall have the right to rely on the presumption that the bank of deposit is the owner of the item." This provision is criticized as anomalous by the draftsmen of the Uniform Commercial Code, Comments, Art. 4, secs. 4–201, but it is the statutory law of

Maryland and others States. This Court does not construe that provision, however, as changing the relationship between the depositor and the depositary bank, in the absence of a specific agreement. See Art. 11, sec. 119.

14. "§ 3237. *Offenses begun in one district and completed in another*
"Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.
"Any offense involving the use of the mails, or transportation in interstate or foreign commerce, is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce or mail matter moves."

district has jurisdiction. Rev.Stat. sec. 731; 1 Comp.Stat. p. 585. There was no beginning of the offense in Missouri. The payment of the money was in Washington, and there was no commencement of that offense when the officer of the Rialto Company sent the checks from St. Louis to defendant. The latter did not thereby begin an offense in Missouri." 196 U.S. 283, at 304, 25 S.Ct. 243, at 248, 249, 49 L.Ed. 482. The first sentence of that passage must be read in connection with the point argued, shown by the balance of the quotation. Even if the first sentence should be construed more broadly, as intended to cover also the conversion of the checks into money, the conclusion stated therein would not apply here, because the facts and the applicable law are different. In Burton the Supreme Court held that title to the checks, which had been delivered to the Congressman in the District of Columbia, had passed to the Riggs Bank in that District, since the bank had in legal effect purchased the checks from the Congressman. Under the present Maryland law, applicable in the instant case, if the Berlin bank were acting as agent of Johnson in converting the checks to cash, the offense of receiving may well be considered as having been begun when the checks were deposited in the Berlin bank and not completed until they were paid by the drawee banks or until the credit to Johnson's account was made unconditional.

It is unfortunate that questions of venue should turn upon the banking law of the place where the checks were deposited, but that appears to be the teaching of Burton. The government might have avoided the problem in this case by prosecuting the charges made in the Second to Eighth Counts in the District of Columbia, where the services are alleged to have been rendered. But the government had the right to seek an indictment either in the District where the services were rendered or in the District where compensation was received.

■ At the present time it is only necessary to rule that under the applicable law the seven substantive counts (Second through Eighth) sufficiently allege that Johnson received compensation in the District of Maryland, and that the motion to dismiss those counts for lack of venue must be denied.

### B.

#### Claimed Failure to Charge an Offense Against the United States

■ Defendants have moved to dismiss the substantive counts (Second to Eighth) on the ground that those counts fail to state an offense against the United States committed by defendant Johnson, and therefore fail to state an offense committed by the other defendants as aiders and abettors.[15] They contend: (1) that the services were rendered by Johnson as an attorney in connection with a prosecution against Edlin and others, then pending before this District Court; (2) that sec. 281 does not prohibit a Member of Congress from receiving compensation for representing a client in court, even though the United States is a party or is interested in the case, and therefore should not be construed to prohibit him from conferring with officials of the Department of Justice in connection with the court proceeding; and (3) that no offense under sec. 281 was committed unless the compensation was received for services rendered for the purpose of obtaining favorable decisions and actions in relation to a proceeding, charge, accusation or other matter pending before a department; that the Department of Justice had no power to decide or act upon a request to postpone or dismiss the Edlin indictment, since this power rested with the Court, and therefore that there was no pro-

---

15. A charge against an alleged aider and abettor must fall if no sufficient charge is made against the principal. Meredith v. United States, 4 Cir., 238 F.2d 535, 542.

See also United States v. Tornabene, 3 Cir., 222 F.2d 875; Edwards v. United States, 5 Cir., 286 F.2d 681; Karrell v. United States, 9 Cir., 181 F.2d 981.

-ceeding, charge, accusation or other matter pending before the Department.

These points will be considered in ·order:

■ (1) The indictment nowhere alleges that Johnson is a lawyer, but ·charges him for his actions as a Member ·of Congress and not as an attorney acting for a client. The Court may take judicial notice of the fact that Johnson is a member of the bar, but may also take notice of the fact that he did not enter his appearance for any of the defendants in the indictment against Edlin et al, which was pending in this Court. It does not appear from the indictment in the instant case or from any of the motions filed herein that Johnson told the officials of the Department of Justice that he was appearing before them or acting as an attorney representing any of the defendants named in the indictment against Edlin et al.

■ (2) Sec. 281 does not prohibit a Member of Congress from receiving compensation for appearing in a court proceeding even though the United States is a party or otherwise interested. Congressional Globe, pt. 1, 38th Cong., 1st sess. (1863–64), pp. 63, 555–56, 561. See also 42 Cong.Rec. (1908), pp. 1895–1898; Burton v. United States, 202 U.S. 344, 365, 26 S.Ct. 688, 50 L.Ed. 1057; United States v. Waldin, E.D.Pa., 122 F.Supp. 903; United States v. Adams, D.N.D., 115 F.Supp. 731; United States v. Quinn, E.D.N.Y., 111 F.Supp. 870.

It is not necessary to decide on the pending motions to what extent a Member of Congress who has entered his appearance publicly for a defendant in a criminal case pending in a federal court may act outside the court room to persuade officials or employees of the Department of Justice to take or refrain from taking any specific action in that case. Cf. Chudoff v. McGranery, 3 Cir., 179 F.2d 869. It is difficult, perhaps impossible, to draw a line if the Congressman is openly appearing as an attorney for the accused. But that is not

the situation presented by this indictment and by these motions.

■ The main purpose of sec. 281 is "to secure the integrity of executive action against undue influence upon the part of members of that branch of the Government whose favor may have much to do with the appointment to, or retention in, public position of those whose official action it is sought to control or direct. The evils attending such a situation are apparent and are increased when those seeking to influence executive officers are spurred to action by hopes of pecuniary reward." Burton v. United States, 202 U.S. at 368, 26 S.Ct. at 693–694, 50 L.Ed. 1057. See also United States v. Quinn, S.D.N.Y., 141 F.Supp. 622, 624. The evils are further increased if the Member of Congress fails to disclose the fact that he is appearing as an attorney for compensation and not as a disinterested public official.

None of the cases cited by either the government or defendants is directly in point, but they have been helpful in clarifying the issue.

■ Although the statute must be strictly construed, it should be construed to accomplish its purpose, as defined by the Supreme Court, and to prevent the mischief at which it was aimed. All "court related activities" are not excluded from its operation. Under the facts charged in the indictment and appearing from the motions, see discussion under (1) above, the pendency in court of the indictment against Edlin et al. at the time Johnson is alleged to have rendered services for compensation before the Department of Justice does not of itself preclude a prosecution under sec. 281.

■ (3) Defendants' third point assumes that there was no violation of sec. 281 unless the proceeding, charge, accusation or other matter was *pending* before the Department. They argue that since the indictment against Edlin et al. was pending before this Court, there was

nothing pending before the Department of Justice on which it could act. However, the word "pending" does not appear in sec. 281. The words "before any department, agency", etc. refer to where the services have been rendered or are to be rendered, not where the proceeding or other matter is pending. This conclusion is supported by the way the offense was stated in the second Burton opinion, where the Supreme Court, construing a predecessor statute which used similar language, said: "But we cannot doubt the authority of Congress by legislation to make it an offense against the United States for a Senator, after his election and during his continuance in office, to agree to receive or to receive compensation for services to be rendered or rendered to any person, before a Department of the Government, in relation to a proceeding, matter or thing in which the United States is a party or directly or indirectly interested." 202 U.S. at 365, 26 S.Ct. at 692, 50 L.Ed. 1057. See also Waldin, 122 F.Supp. at 905, and the Report of the Judiciary Committee of the House in connection with the 1962 statute above referred to, which makes it clear that the new statute, like the old, is intended to embrace all matters that come before a Federal department or agency.[16]

■ Defendants argue that the Department was without power to postpone or dismiss the court proceeding. Nevertheless, the Department had power to request a postponement and to move to dismiss the indictment. Rule 48(a), F.R.Crim.P., 18 U.S.C.A. That was the determination and action by the Department sought by Johnson, according to the indictment. The fact that Court approval would be necessary to accomplish a final dismissal of the indictment is not fatal to the charge made in the Second to Eighth Counts. Felder v. United States, 2 Cir., 9 F.2d 872, 874.

16. H.R.Rep.No.748, 87th Cong., 1st Sess., July 20, 1961, p. 20.

17. They argue that where a statute defines as criminal an act which necessarily requires the participation of two persons,

## C.

### Payor as Aider and Abettor

■ Edlin and Robinson have moved to dismiss the substantive counts as against them on the ground that one who pays money to a Member of Congress is not an aider and abettor of the crime of receiving compensation proscribed by sec. 281.[17] So stated, the proposition presents a serious legal question, which has been answered differently by different judges. See May v. United States, 84 U.S.App.D.C. 233, 175 F.2d 994, 1002 et seq., with dissenting opinion by Judge Stephens, 175 F.2d at 1011, 1018 et seq., and United States v. Bowles, D.Me., 183 F.Supp. 237. See also Gebardi v. United States, 287 U.S. 112, 53 S.Ct. 35, 77 L.Ed. 206; Nigro v. United States, 8 Cir., 117 F.2d 624; and Lott v. United States, 9 Cir., 205 F. 28. It is not necessary, however, to answer that question at this time. Each of the seven substantive counts charges Edlin and Robinson, as well as Boykin, with "aiding, abetting, counselling, commanding, inducing and procuring" the commission of the offense. A bill of particulars, furnished at defendants' request, states that Boykin, Edlin and Robinson "aided, abetted, counselled, commanded, induced and procured" Johnson in the rendering of the services alleged as well as in the receipt of the compensation alleged. The manner in which the several defendants are claimed to have aided and abetted the planning and performance of the services is specified in detail in the bill of particulars. If the evidence shows that Edlin and Robinson did nothing to aid and abet the alleged offenses except to make the payments charged in the several counts, they may raise the point on motion for judgment of acquittal. But the allegations contained in the substantive counts of the indictment are sufficient. United States v. Quinn, E.D.N.Y., 111 F.Supp. 870.

and the statute specifically makes only one of those persons criminally liable, this is evidence of a legislative intention to leave the conduct of the other unpunished.

*

All motions to dismiss the Second to Eighth Counts are hereby denied, without prejudice to the rights of defendants to raise similar points by motions at the conclusion of the government's case or at the close of all the evidence.

## III.

### Motions for Discovery

#### A.

### Grand Jury Testimony

Boykin and Johnson have each moved, pursuant to Rule 6(e), F.R.Crim.P., for an order directing production of a transcript of their respective testimony given before the grand jury which returned the indictment in this case. Both of them voluntarily accepted an opportunity to testify before the grand jury; neither was summoned.

Boykin has supported his motion by his own affidavit and by a letter from George W. Calver, M.D., the attending physician to the Congress of the United States, which has been admitted in evidence in support of his motion without objection from the government. From the affidavit and certificate, it appears: that Boykin testified before the grand jury on October 12, 1962; that he had been a patient at the U. S. Naval Hospital at Bethesda, Maryland, from September 29 until October 10; that his appearance before the grand jury was against the advice both of the medical officers at the Hospital and of Dr. Calver, who had told Boykin that he should take at least a week to recover from his cardiac difficulties and to get his strength back; that Boykin had a difficult time making the trip to Baltimore; that he was weak, particularly while testifying before the grand jury, and that he was under physical and emotional strain. Boykin also states that he has not been able to remember with clarity or to inform his attorneys about the testimony which he gave at the grand jury hearing; that his home in Mobile, Alabama, and his office in Washington, D. C., were burglarized on or about March 4, 1962, and, following the burglaries, a number of documents referred to in the First Count were missing.

Johnson has supported his motion by an affidavit that he was interrogated by the United States Attorney for several hours on September 25, 1962, and produced certain records which had been requested; that he recalls clearly some of his testimony, but by reason of the length of the testimony, the intensity at times with which it was conducted, and the fact that he was tired, physically and mentally, from his work in the House of Representatives and his vigorous campaign for reelection, he does not recall a considerable part of his testimony; that he seeks an opportunity to inspect and copy the transcript of his testimony before the grand jury in order that he may prepare adequately in advance of the trial his defense to the accusations contained in the indictment.

In response to a request from the Court, the government has stated that it has not yet decided whether it will use the testimony of Boykin as part of its case in chief against him, and will not decide until a week or so before the trial. The government made the same statement with respect to the possible use of Johnson's testimony.

The long established policy of the federal courts, firmly entrenched in this Circuit and this District, is to preserve the secrecy of grand jury proceedings. Disclosure of grand jury testimony should rarely be granted and then only under "compelling necessity", upon a showing of "particularized need". Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 399, 79 S.Ct. 1237, 3 L.Ed.2d 1323; United States v. Proctor & Gamble Co., 356 U.S. 677, 683, 78 S.Ct. 983, 2 L.Ed.2d 1077; United States v. Socony Vacuum Oil Co., 310 U.S. 150, 234, 60 S.Ct. 811, 84 L.Ed. 1129; United States v. Kahaner, S.D.N.Y., 203 F.Supp. 78, 86; United States v. Wortman, E.D. Ill., 26 F.R.D. 183, 206.

The facts alleged in support of Johnson's motion are similar to those in Kahaner, where Judge Weinfeld said: "Undoubtedly most persons who appear before grand juries as prospective defendants are under some emotional tension. However, it would indeed be unusual for any person, whether calm or under stress, to recall the precise details of his questioning. If this were an adequate basis upon which to require disclosure of testimony, the grand jury minutes should be made available as a matter of course to any witness who is later indicted. Perhaps this should be the rule. While there are those, including this Court, who believe that in an enlightened system of criminal justice defendants who have made voluntary statements to prosecution and investigation officials should, as a matter of simple fairness, receive copies of their statements, such view has not yet found general favor and admittedly there does not appear any doctrinal trend in that direction. To grant this motion on the sole ground advanced would not only breach the historic policy against disclosure of grand jury matters, but would initiate a precedent which appears foreclosed by the rationale of the recently decided Murray case." [18] 203 F.Supp. at 87. There is no showing that Johnson was not in full possession of his faculties when he gave his testimony; nor is any reason suggested why his present version of the facts should differ from the original.

18. United States v. Murray, 2 Cir., 297 F. 2d 812, 820–822.

19. If the general rule is to be changed it should be done by the Supreme Court, per-

Johnson has shown no "compelling circumstances" or "particularized need" for the disclosure of his testimony at this time.[19] His motion is hereby denied, without prejudice to his right to renew the motion if and when the government decides to offer his grand jury testimony as part of the case in chief. This Court intimates no opinion as to what its ruling would then be.

Boykin's motion presents a different situation. His poor physical condition at the time he testified is supported not only by his own affidavit but by the certificate of the attending physician to the Congress. Under all the circumstances, the Court feels that Boykin has shown a "particularized need" to examine his testimony at this time, so that he may know the incidents which he may be called upon to admit, deny or explain, and to prepare his defense. His motion is hereby granted.

## B.

### Other

Defendants requested the disclosure of various items believed to have been in the possession of the government. The Court understands that all such questions have now become moot, either because the government has made the material available to defendants or because the government has stated that it does not have the particular document requested.

haps by an amendment to the Criminal Rules. This Court adheres to the general rule.