**UNITED STATES of America,**
**Plaintiff,**

v.

**Alfred L. KASKEL, Abraham Traub, Samuel Greenberg, Isidore Weckstein, Dara Gardens, Inc., and Churchill Manor, Inc.,**
**Defendants.**

**Cr. 44068.**

United States District Court
E. D. New York.

Jan. 27, 1956.

Gallop, Climenko & Gould, Milton S. Gould, New York City, for defendants Alfred L. Kaskel, Samuel Greenberg, Dara Gardens, Inc., and Churchill Manor, Inc.

J. Bertram Wegman and Richard J. Burke, New York City, for defendant Abraham Traub, for the motion.

Leonard P. Moore, U. S. Atty., Brooklyn, N. Y., Edgar G. Brisach, Asst. U. S. Atty., New York City, and Howard Gliedman, Asst. U. S. Atty., Brooklyn, N. Y., in opposition.

RAYFIEL, District Judge.

The defendants Alfred L. Kaskel, Samuel Greenberg, Dara Gardens, Inc., and Churchill Manor, Inc., have moved herein for the following relief:

(A) an order directing the Government to file a bill of particulars setting forth the information described in detail in the notice of motion therefor;

(B) an order under Rule 16 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., directing the United States Attorney for this district to permit the attorneys for said defendants to inspect and copy, or photograph or photostat, certain letters, reports and memoranda furnished by the Metropolitan Industrial Bank to the Superintendent of Banks of the State of New York in connection with a proceeding pending before him in 1953 and 1954, relating to loans made by the said bank to the corporate defendants herein, as well as the transcripts of the testimony of the defendants Kaskel and Weckstein, and other officers, agents and employees of said Bank, taken in the said proceeding. The notice of motion for the relief sought under (B) hereof asked also for an order under Rule 17 (c) of the aforementioned rules, directing the United States Attorney to produce certain papers and documents designated and described in a subpoena duces tecum served on him simultaneously therewith, and (C) an order directing the United States Attorney and/or any officers of the Department of Justice acting with him herein to return to the defendant Kaskel certain books, papers and documents obtained from and delivered by him pursuant to a subpoena duces tecum, consisting generally of checks, receipts, bank statements and book records of various corporations, including the corporate defendants herein, in which the defendant Kaskel is alleged to have a controlling or substantial interest, and which are more particularly described in "Schedule A", which is annexed to and forms a part of the supporting affidavit of Milton S. Gould, Esq.

The defendant Traub, in separate motions, asks for identical or substantially similar relief.

As to the Motion for a Bill of Particulars.

The particulars sought consist of thirteen items set forth in the Kaskel notice of motion (they are numbered differently in the Traub notice) and reference will be made to them as numbered in the former.

Items 1 and 9, relating to paragraph 10 of Count 1 of the indictment, demand that the Government describe with particularity the records of the Metropolitan Industrial Bank, if any, other than the monthly report to its Board of Directors, showing the loans to the corporate defendants which are described in paragraphs 7 and 9 of Count I thereof. The said records were subpoenaed by the Grand Jury which returned the indictment herein. They have already been inspected by or in behalf of the defendants, pursuant to an order entered herein on the 21st day of October, 1955. If the said bank has other records involving its transactions with the corporate de-

fendants they can be made available to the defendants by subpoena. Items 1 and 9 are therefore denied.

Items 2 and 10 seek information as to how the defendants Kaskel and Traub acquired knowledge of the alleged falsity of the records referred to in paragraph 10 of Count I of the indictment. To grant these items would in effect require the Government to disclose the names of some of its witnesses and reveal the testimony which they are expected to offer at the trial. Conceivably, it might also limit the amount of Government evidence relating to the matters covered by said demand. Accordingly, items 2 and 10 are denied.

Items 3 to 8 involve Counts I to VI of the indictment, one paragraph of each of which states, inter alia, that the crime charged in the count in question relates to a *matter* "within the jurisdiction of an agency of the United States, to wit, the Federal Deposit Insurance Corporation." The defendants ask that the Government describe with particularity the *matter* said to come within the jurisdiction of the said Corporation, and enumerate the statutes, order, rules or regulations from which such jurisdiction is derived. Each of said counts describes with great particularity the transactions with the Metropolitan Industrial Bank alleged to have been violative of section 1001 of Title 18, U.S.Code, cited therein, and states that the deposits in said bank "were insured by the Federal Deposit Insurance Corporation, an agency of the United States." An examination of the statute creating said agency will disclose its purpose, functions and jurisdiction. Hence, items 3 to 8, inclusive, are denied.

Item 11 is directed to Counts VII to XXXI, inclusive, each of said counts refers, inter alia, to a certain monthly report required to be filed by the Metropolitan Industrial Bank under Section 304A of the Banking Law of the State of New York, and charges that the defendants Alfred L. Kaskel, Samuel Green-berg, Isidore Weckstein and one or the other of the corporate defendants caused an entry to be made in such report with intent to deceive the Federal Deposit Insurance Corporation. Some of the said counts also charge the defendant Abraham Traub with the same offense. The defendants, contending that the charges therein contained are vague and indefinite, seek under item 11 to compel the Government to inform them as to the manner in which it will be claimed that they intended to practice deception on the Federal Deposit Insurance Corporation. The third and fourth paragraphs of Count VII of the indictment and the relevant paragraphs of the remainder of said Counts, contain in considerable detail the averments of the acts which constitute the alleged violation of section 1005 of Title 18, U.S.Code, the statute on which said counts are based, including the fact that such acts were committed with intent to deceive the said governmental agency.

The Government will, of course, be obliged to establish such intent at the trial. The defendants seek, under item 11, to obtain the Government's evidence on that point now, relief to which they are clearly not entitled. The cases cited by the defendants in support of their position are inapposite. Item 11 is accordingly denied.

Under item 12 the defendants seek to be informed as to the manner in which, the time when, and the place where the defendants caused one George Spinner and others to make the allegedly false entries referred to in Count VII to XXXI, inclusive, of the indictment. Here, too, the defendants seek discovery of part of the Government's evidence. Hence, item 12 is denied, as, for the same reason, is item 13.

Item 5 of the Defendant Traub's application for a bill of particulars is granted. The Government will furnish the said defendant or his attorney with information as to the occupations of John J. Leugers and George Regan at the time

or times referred to in Overt Acts 71 and 96, respectively, of Count XXXI of the indictment. Items 1 to 4 of the Traub application are denied, except that as to item 4 the Government will state whether either John J. Leugers or George Regan, above named, was an examiner of the Federal Deposit Insurance Corporation.

Concededly, an indictment must describe the offense charged therein with sufficient particularity to permit the defendants to prepare their defense and to safeguard them against a second prosecution for the same offense. The defendants contend generally that the instant indictment is vague and indefinite, and claim that compliance with their demand for a bill of particulars is necessary if they are to be enabled to properly and adequately prepare their case for trial and avoid prejudicial surprise. I disagree.

I have carefully read the indictment. It is not prolix, as claimed by the defendants. It is, however, voluminous, but necessarily so. It contains thirty-one substantive counts, each charging a violation of section 1001 or 1005 of Title 18, U.S.Code, and one conspiracy count, alleging 96 overt acts.

Both of said statutes relate to crimes involving, inter alia, false and fraudulent statements. An indictment charging offenses thereunder must, if it is to comply with the rules, set forth in some detail the facts and circumstances relating to the statements referred to therein. The instant indictment clearly and specifically covers all the elements of the crime charged. The ninety-six overt acts alleged under Count XXXII set forth in comprehensive detail the facts constituting the alleged crimes charged in Counts I to XXXI, inclusive.

As to the Motion for Leave to Inspect Certain Transcripts, etc., Received by the U. S. Attorney from the Superintendent of Banks of the State of New York.

The defendants ask for (a) transcripts of the testimony of the defendants Kaskel and Weckstein, and of other officers or employees of the Metropolitan Industrial Bank, taken during a proceeding then pending before the Superintendent of Banks of the State of New York, and (b) letters, reports and memoranda furnished to the Superintendent of said bank, relating to loans made by it to the corporate defendants herein.

The defendants' application is made under Rules 16 and 17(c) of the Federal Rules of Criminal Procedure, under which latter rule they seek the production of said papers pursuant to subpoenas served on Hon. Leonard P. Moore, the United States Attorney for this district, and on Edgar G. Brisach, Esq., one of his assistants.

Since the papers sought under (b) hereof were never in the possession of the United States Attorney, as appears from the affidavit of Mr. Brisach, the application therefor is denied. The cases cited by the defendants in support thereof involve factual situations distinguishable from those in the instant case. Nor are the documents sought under (a) hereof obtainable under Rule 16, supra, since, concededly, they were not "documents * * * obtained from or belonging to the defendant or obtained from others by seizure or by process", as provided by the said rule. There remains for consideration, then, the question as to whether the aforementioned transcripts should be made available to the defendants for inspection and copying under Rule 17(c), supra.

The Government opposes the application on the ground that compliance therewith would be unreasonable and oppressive, and violative of the provisions of section 36 of the Banking Law of the State of New York, McK.Consol. Laws, c. 2. The provision of said section which is pertinent to the Government's claim reads as follows, subd. 10:

"All *reports* of examinations and investigations, *including any duly authenticated copy or copies thereof in the possession of any banking organization, foreign banking corporation, licensed lender, licensed cashier of checks, or the savings and loan bank of the state of New York,* shall be confidential communications, shall not be subject to subpoena and shall not be made public unless, in the judgment of the superintendent, the ends of justice and the public advantage will be subserved by the publication thereof, in which event he may publish a copy of any such *report* or any part thereof in such manner as he may deem proper." (Emphasis added.) It is the Government's contention that it received the said transcripts from the Superintendent of Banks specifically and solely for the "cross examination and confrontation" of the witnesses involved, in the event that they should testify at the trial of the indictment herein, and that it is restricted to such use. It contends also, as hereinabove stated, that compliance with the defendants' demand would constitute a violation of the aforementioned section 36 of the Banking Law. I doubt that the transcripts in question are such *reports* as were contemplated by and come within the purview of section 36, but I do not find it necessary to decide that question since, absent such a statute, I would be constrained to deny the application as to the transcripts of all the witnesses who testified at the said hearings before the Superintendent with the exception of the defendant Kaskel; first, because they are not evidentiary, as is required under the authority of Bowman Dairy Co. v. United States, 341 U. S. 214, 71 S.Ct. 675, 95 L.Ed. 879, cited by the defendants in support of their application; second, because there has not been the required affirmative showing that they are material to the preparation of the defense; and third, because the granting thereof would give the defendants access before the trial to the names and testimony of possible Government witnesses. The defendants direct their arguments chiefly to the transcript of the defendant Weckstein, claiming that since the United States Attorney did not oppose the application for a severance made in behalf of the said defendant it may be assumed that he will testify in behalf of the Government at the trial. There is no substantial reason why any distinction should be made between the testimony of Weckstein and that of any other witness who testified at the hearing before the Superintendent of Banks.

Since the United States Attorney will have the opportunity to use the said transcripts at the trial of the indictment herein, at least for the purpose of "cross examination and confrontation", the defendants should be afforded the same right and privilege. Accordingly, the United States Attorney will produce the said transcripts at the trial (if the same should for any reason be unobtainable under subpoena served upon the Superintendent of Banks of the State of New York) for such use as the trial judge may direct.

■ However, the situation respecting the Kaskel transcript is quite different. I do not think it will be claimed that the testimony of the defendant Kaskel at the aforementioned hearing is any more inviolable than would be his testimony before a grand jury. Nevertheless, disclosure of the grand jury testimony of a defendant is wholly proper where the ends of justice require it. United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 234, 60 S.Ct. 811, 84 L.Ed. 1129. In the case of United States v. Rose, 3 Cir., 215 F.2d 617, at page 629, involving, inter alia, an application similar to "B" hereof, the Court said: "In United States v. Remington, 2 Cir., 1951, 191 F.2d 246, 250, certiorari denied, 1952, 343 U.S. 907, 72 S.Ct. 580, 96 L.Ed. 1325, the Court of Appeals for the Second Circuit was faced with the same issue which is raised here. The defendant had been found guilty of the crime of perjury in testifying before a grand jury that he had never been a member of the Commu-

nist Party. The Court of Appeals reversed, and said: 'The court denied the defendant's motion to inspect the minutes of his own testimony before the grand jury. We think inspection before trial should have been allowed. As already stated, the essential issue in perjury is whether the accused's oath truly spoke his belief; all else is contributory to that issue. In deciding it the jury was entitled to know, and the accused was entitled to show, what had gone before the critical question and answer, since this might throw light on how he understood the question and what he meant by his answer. For example, if he had previously testified that he never had a Party card, that might indicate that he believed that without a card he could not be a member. His memory of what he said is no adequate substitute for the minutes themselves. It is one thing to deny the defense access to grand jury minutes which it intends to use for the relatively negative purpose of impeaching a witness; it is quite a different thing to deny an accused access to the minutes of his own testimony which may afford him an affirmative defense. * * * We see no good reason for suppressing the evidence under these circumstances.'

"We think that United States v. Remington enunciates a sound principle of law insofar as perjury cases are concerned, and accordingly conclude that the trial judge erred when he denied the defendant's motions to inspect his testimony before the Grand Jury.

"When placed in their full setting defendant's statements to the Grand Jury might well take on different connotations than when viewed in relative isolation. Furthermore, the rationale of the Remington case is especially applicable, when, as here, the defendant asserted that lapses of memory attributed to his physical condition made it difficult to recall his Grand Jury testimony for the purpose of preparing his defense.

"Since all the defendant desires is a transcript of his *own* testimony, the sanctity of that which transpired before the Grand Jury is hardly in question. In addition, such disclosure would not subvert any of the reasons traditionally given for the inviolability of Grand Jury proceedings. * * * " Note particularly the preceding paragraph and the Court's emphasis of the word "own". While United States v. Remington, supra, involved a prosecution for perjury, it is my opinion that the principle involved would be equally applicable to the instant case.

United States v. Carter, D.C., 15 F.R. D. 367, cited by the defendants, involved the question as to whether a defendant in a criminal case under Rule 17(c) of the Federal Rules of Criminal Procedure, may inspect, prior to trial, all statements of potential witnesses in the file of the Government. Judge Holtzoff said, at page 369, "Obviously, statements of witnesses are not admissible in evidence. Neither may they be used for impeachment purposes unless the witness is actually called by the Government. Statements are often obtained from potential witnesses who eventually are not called to testify. * * * For these reasons a defendant in a criminal case is not entitled to an unbridled disclosure and inspection of statements of witnesses contained in the files of the Government. In their broad form the motions must be denied. They will be granted to the limited extent only, as hereinafter indicated."

The limited extent to which Judge Holtzoff granted the application was stated, at page 371, as follows: "5. *A written statement made and signed by the defendant should be subject to inspection under Rule 17(c). In fact, it has been the invariable practice of several judges of this court, including myself, to direct the United States Attorney, on application of defense counsel, to permit the latter to inspect prior to the*

484

*trial any written statement signed by the defendant and in the possession of the Government. This course seems both sensible and fair.*

"6. If a witness is called by the Government, any written statement signed by the witness in its possession should be made available to defense counsel prior to cross-examination, in order that it may be used for impeachment purposes, if need be. Fairness and justice obviously require this course. As a matter of fact, it has been uniformly pursued by several judges of this court, including myself. There is no reason, however, why such a statement should be examined in advance of the trial, since the witness may not eventually be called to testify." (Emphasis added.)

█ Accordingly, the application for leave to inspect and copy the transcripts of the witnesses who testified at the hearing before the Superintendent of Banks is granted *as to that of the defendant Kaskel*, and otherwise denied.

As to the Motion to Direct the Return to the Defendant Kaskel of Certain Books, Documents and Records of Various Corporations.

The books, documents and records to which this motion is addressed are described in a statement designated as Schedule A, annexed to and forming a part of the affidavit of Milton S. Gould, Esq., submitted in support of the application. They involve the business affairs of a number of corporations in which the defendant Kaskel is alleged to have a controlling or substantial interest.

Kaskel grounds his motion on the fact (1) that the books and records of the corporate defendants which were subpoenaed in May, 1955, for use by the Grand Jury which returned the indictment herein, are indispensable to the preparation of the defense of the charges contained in the indictment; (2) that since an indictment has already been returned the purpose for which the books and records were subpoenaed has

been accomplished and satisfied, and he is accordingly entitled to their return; (3) that possession thereof is necessary for the proper conduct of the business affairs of the corporations involved; and (4) that except for those of the corporate defendants the books and records described in Schedule A have no relevancy or materiality to any of the issues herein.

In its memorandum in opposition the Government, under Point 1, argues that the relief sought by the defendant cannot be granted under Rule 16 of the Federal Rules of Criminal Procedure, since that Rule requires a showing that the items sought be material to the preparation of the defense, and the aforementioned affidavit of Milton S. Gould, Esq., (par. 8) it points out, contains a statement to the effect "that none of these books are relevant or material to *the defense* of the issues herein". (Emphasis added.) That point is without merit for two reasons; first, because the statement is inaccurate, the words "defense of" having been added to the quotation, and second, because the application is not addressed to Rule 16, supra, but, rather, to the inherent equity power and authority of the Court.

█ The Government contends further that the Grand Jury has not completed its investigation of the matters into which it was directed to inquire, and still requires the books and records for that purpose. It is my opinion that, except for those hereinafter specifically designated, the books and records now in the possession or control of the United States Attorney are not relevant or material to the charges contained in the indictment. Moreover, they have been in his possession or control for about nine months, ample time for the Government to have made such use of them as was necessary and proper. The Government has questioned the accuracy of Schedule A, aforesaid, claiming that some of the papers, documents and records therein designated never came into its possession.

The United States Attorney will be directed to return to the defendant Kaskel or his attorneys all those books, records and documents referred to in Schedule A of which he obtained possession, custody or control, except those of the corporate defendants and the following four corporations: Doral Construction Corp., Forest Hill Apts., Inc., Forest Hill Terrace, Inc., and Howard Terrace, Inc., possession of which he may retain until the trial of the case. The defendant and his attorneys, or their designated representatives, may, of course, inspect and make extracts from any or all of such records at all reasonable times while they are in the possession or control of the United States Attorney.

At the commencement of the trial the books and records will come under the jurisdiction and control of the trial judge, who will make such decisions respecting their use as justice may require.

Settle, on notice, order in conformity with the foregoing.