UNITED STATES of America

v.

Irving PROJANSKY et al., Defendants.

No. 67 Cr. 729.

United States District Court
S. D. New York.

May 22, 1968.

Robert M. Morgenthau, U. S. Atty. for the Southern Dist. of New York, for the United States, Paul R. Grand, Asst. U. S. Atty., of counsel.

Mermelstein, Burns & Lesser, New York City, for defendant, Zafer, Arnold I. Burns, Jay D. Fischer, Malcolm H. Bell, New York City, of counsel.

Joseph E. Brill, New York City, for defendant, Brainin.

Moses L. Kove, New York City, for defendants, Irving Projansky and Stuart Projansky.

Carro, Spanbock & Londin, New York City, for defendant, Weitz, Jerome J. Londin, New York City, of counsel.

Patterson, Belknap & Webb, New York City, for defendant, Leavitt, Robert P. Patterson, Jr., New York City, of counsel.

Milberg & Levy, New York City, for defendant Geier, Melvyn Weiss, New York City, of counsel.

Christy, Bauman, Frey & Christy, New York City, for defendant, Peltz, Arnold Bauman, New York City, of counsel.

Stone, Malone, Driver & McNeill, New York City, for defendant, Werman, John McNeill, New York City, of counsel.

OPINION

FRANKEL, District Judge.

Sixteen defendants are charged in a fourteen-count indictment with conspiracy to violate, and substantive violations of, various statutes forbidding fraudulent and manipulative practices affecting the trading of securities on a national

exchange. The details of the lengthy indictment are not important just now. Our concern at the moment centers upon an array of defense motions for discovery in which each of several defendants seeks under Fed.R.Crim.P. 16(a) to inspect and copy or photograph (1) his written statements or confessions now in the possession, custody or control of the Government and (2) his own recorded testimony before the grand jury which returned the indictment. Supporting the request, while they make some occasional suggestions of special or unique need, defendants place main reliance upon the view that Rule 16(a), as recently amended, confers an automatic, or practically automatic, right to the discovery of such potentially damaging materials emanating from the defendant himself. In opposing arguments which have become fairly routine in this courthouse, the Government argues that defendants must show some sort of "good cause" or "particularized need" before they may obtain the requested items.

The subject is one which has divided the judges of this Court.[1] Because of

---

1. Three judges have adopted the view advanced by the Government here, both as regards statements or confessions, see United States v. Louis Carreau, Inc., 42 F.R.D. 408, 411–413, 415 (1967); United States v. Wallace, 272 F.Supp. 838, 840 (1967); United States v. Garcia, 272 F.Supp. 286, 289 (1967); United States v. Mastrobuono, 271 F.Supp. 197, 198 (1967); United States v. Cobb, 271 F.Supp. 159, 161 (1967); United States v. Crisona, 271 F.Supp. 150, 157 (1967); United States v. Edwards, 42 F.R.D. 605, 606 (1967); United States v. Mesones, 67 Cr. 478 (June 15, 1967); United States v. Wood, 270 F.Supp. 963, 964 (1967); United States v. Leighton, 265 F.Supp. 27, 33–34, 39–40 (1967); United States v. Diliberto, 264 F.Supp. 181, 182–183 (1967); United States v. Dubbin, 67 Cr. 361, pp. 14–15 (January 31, 1968); United States v. Kaminsky, 275 F.Supp. 365, 367 (1967), and recorded testimony of the defendant before a grand jury, see United States v. Caine, 270 F.Supp. 801, 806 (1967); United States v. Roberts, 264 F.Supp. 622, 624–625 (1966); United States v. Dubbin, supra. A fourth judge has indicated his agreement with this position. See United States v. Wolfson, 66 Cr. 832, p. 12 (March 20, 1968). We count seven judges (including the present writer) who have either explicitly rejected the view that the defendant must show "good cause" or have granted discovery without indicating that such a requirement had been imposed or fulfilled. See United States v. Aadal, 280 F.Supp. 859, 861–862 (1967); United States v. Pilnick, 267 F.Supp. 791, 801 (1967); United States v. Mosley, 266 F.Supp. 834 (1967); United States v. Scharf, 267 F.Supp. 19, 20 (1967); United States v. Gleason, 259 F.Supp. 282, 285 (1966); United States v. Federman, 41 F.R.D. 339, 340–341 (1967); United States v. Greenberg, 67 Cr. 318 (December 22, 1967); United States v. Kupferberg, 67 Cr. 245 (July 27, 1967). United States v. Longarzo, 43 F.R.D. 395 (1967), seems properly placed in this second category. Although the defendant there was "required to show sufficient facts upon which the court can base an opinion," his assertion that he had no recollection of the contents of his statements and that such information was essential for preparation of the defense was regarded as "a salient reason" for discovery. Id. at 396. Compare United States v. Wallace, supra, 272 F.Supp. at 840, and United States v. Edwards, supra, 42 F.R.D. at 606.

For the most part, the district courts in other areas do not appear to have required a special showing of need before granting a defendant's request for discovery under Rule 16(a). See United States v. Tanner, 279 F.Supp. 457, 472 (N.D.Ill.1967); United States v. Iovinelli, 276 F.Supp. 629, 631 (N.D.Ill.1967); United States v. Turner, 274 F.Supp. 412, 415, 418 (E.D.Tenn.1967); United States v. Baker, 262 F.Supp. 657, 671–72 (D.D.C.1966); United States v. Bailey, 262 F.Supp. 331, 332 (D.Kan.1967); United States v. Love, 42 F.R.D. 661, 662 (D.N.H.1967); United States v. Venn, 41 F.R.D. 540, 542 (S.D.Fla.1966); United States v. United Concrete Pipe Corporation, 41 F.R.D. 538, 539 (N.D.Tex.1966), petition for writ of mandamus pending sub. nom., United States v. Hughes, 388 F.2d 236 (5th Cir. 1968); United States v. Aeroquip Corporation, 41 F.R.D. 441, 444, 446 (E.D.Mich.1966); United States v. Domingo, 67 Cr. 300, pp. 4–5 (E.D.N.Y. February 2,

this, and because the question arises almost daily with us, it seems apropriate to record the views believed to justify a conclusion that defendants should routinely be given documents like those here in question, without any special showing of any kind, unless the Government can demonstrate some particularized and substantial reasons why this should not be allowed in a particular case.[2]

## I.

Effective since July 1, 1966, Rule 16(a) provides:

"Defendant's Statements; Reports of Examinations and Tests; Defendant's Grand Jury Testimony. Upon motion of a defendant the court may order the attorney for the government to permit the defendant to inspect and copy or photograph any relevant (1) written or recorded statements or confessions made by the defendant, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government, (2) results or reports of physical or mental examinations, and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government, and (3) recorded testimony of the defendant before a grand jury."

If there were no more to go on than the text of this subsection, its immediate context, and the history of change underlying it, the Government would have great trouble justifying the thesis that it is presumptively entitled to withhold from a defendant his own confessions, statements and grand jury testimony.

Prior to July 1, 1966, Rule 16 provided in pertinent part:

"Upon motion of a defendant * *, the court may order the attorney for the government to permit the defendant to inspect and copy or photograph designated books, papers, documents or tangible objects, obtained from or belonging to the defendant or obtained from others by seizure or by process, *upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable.* The order * * * may prescribe such terms and conditions as are just." (Emphasis added.)

Except that the revised Rule still says "the court *may* order"—a subject to be discussed later on—it differs in obviously critical respects from its predecessor:

(1) The old Rule required a "showing that the items sought may be material * * * and that the request is reasonable." Subsection (a) of the new Rule deletes that requirement.

(2) There was no mention in the old Rule, as there is now in 16(a), of a defendant's "confessions" or "statements." Instead, the available category of "papers" and other things was confined to materials "obtained from or belonging to the defendant or obtained from others by seizure or by process * * *." Since a recorded confession or statement, as a tangible object, was not aptly described as having been "obtained from or belonging to the defendant" (or, more certainly, anyone else), the language was commonly thought to exclude discovery of such items.

---

1968); cf. United States v. Jaskiewicz, 272 F.Supp. 214, 215–16 (E.D.Pa.1967). The requirement was explicitly rejected in United States v. Lubomski, 277 F. Supp. 713, 720 (N.D.Ill.1967).

2. See Note, Discovery By A Criminal Defendant Of His Own Grand-Jury Testimony, 68 Colum.L.Rev. 311, 315, 316 (1968).

E. g., United States v. Murray, 297 F.2d 812, 820 (2d Cir.), cert. denied, 369 U.S. 828, 82 S.Ct. 845, 7 L.Ed.2d 794 (1962); Schaffer v. United States, 221 F.2d 17, 19–20, 54 A.L.R.2d 820 (5th Cir. 1955); Shores v. United States, 174 F.2d 838, 842–845, 11 A.L.R.2d 635 (8th Cir. 1949); United States v. Peltz, 18 F.R.D. 394, 396, 403–404 (S.D.N.Y.1955). The inevitability of that conclusion was not beyond question. See, e. g., United States v. Kageyama, 252 F.Supp 284 (D.Hawaii 1966); United States v. Williams, 37 F.R.D. 24 (S.D.N.Y.1965); United States v. Berman, 24 F.R.D. 26, 31–32 (S.D.N.Y.1959); United States v. Peace, 16 F.R.D. 423, 424–425 (S.D.N.Y.1954). What matters now, however, is that the new Rule eliminates any vestige of possible ground for adhering to it.

(3) The old Rule said nothing about a defendant's grand jury testimony. Accordingly, on grounds which may never have been perfectly apposite (see infra), access to such testimony was almost always denied.[3] Subdivision (3) of current Rule 16(a) quite simply and explicitly supplies the former omission.

The history of the revision discloses additional and compelling developments at war with the Government's position. As the present Rule finally emerged, its subsection (b), dealing with materials of types other than those now in issue, retained the former requirements that defendant show "materiality to the preparation of his defense and that the request is reasonable."[4] In an earlier draft, before the division into subsections, although the categories of discoverable things had been broadened, the need to show materiality and reasonableness was retained across the board.[5]

---

**3.** E. g., United States v. Di Salvo, 251 F.Supp. 740, 746 (S.D.N.Y.1966); United States v. Johnson, 215 F.Supp. 300, 317–18 (D.Md.1963); United States v. Wernikove, 214 F.Supp. 112, 113 (E.D.Pa. 1963); United States v. Kahaner, 203 F.Supp. 78, 85–87 (S.D.N.Y.1962); United States v. Van Allen, 28 F.R.D. 329, 334–335 (S.D.N.Y.1961); United States v. Wortman, 26 F.R.D. 183, 205–207 (E.D.Ill.1960); United States v. Gilboy, 160 F.Supp. 442, 447, 462–463 (M.D.Pa.1958). But see United States v. Johnson, supra, 215 F.Supp. at 318; United States v. Schoeneman, 203 F. Supp. 840 (D.D.C.1962); cf. United States v. Woodner, 24 F.R.D. 33, 35–36 (S.D.N.Y.1959).

A general, though by no means universal, exception was recognized in the case of a defendant under indictment for perjury before the grand jury. See United States v. Rose, 215 F.2d 617, 628–630 (3d Cir. 1954); United States v. Remington, 191 F.2d 246, 250–251 (2d Cir. 1951), cert. denied, 343 U.S. 907, 72 S.Ct. 580, 96 L.Ed. 1325 (1952); United States v. Rosenberg, 39 F.R.D. 301, 302 (S.D. N.Y.1966); United States v. White, 104 F.Supp. 120 (D.N.J.1952); cf. United

States v. Shindler, 24 F.R.D. 142, 146 (S.D.N.Y.1959); United States v. Kaskel, 18 F.R.D. 477, 481–484 (E.D.N.Y.1956). But see United States v. Owen, 11 F.R.D. 371, 372–374 (W.D.Mo.1951).

**4.** "Upon motion of a defendant the court may order the attorney for the government to permit the defendant to inspect and copy or photograph books, papers, documents, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, upon a showing of materiality to the preparation of his defense and that the request is reasonable."

As compared with the narrow and specific categories of 16(a), subsection (b) deals with a broad range of documents and other things. Accordingly, as the Advisory Committee said, it made sense in the latter subsection to impose a "requirement of reasonableness" to "permit the court to define and limit the scope of the government's obligation to search its files while meeting the legitimate needs of the defendant."

**5.** The draft, like the old Rule, was in a single, three-sentence paragraph the first

It would be difficult to discover more cogent evidence that the erasure of any such requirements for the things now covered by 16(a) was a deliberate, carefully tailored and substantially meaningful change.

There is more to the amending history than this, none of it favorable to the Government's position. It would approach pedantry to track all the details. What has been reviewed seems sufficient for the conclusion that when he demands "good cause" or "particularized need" or the like under Rule 16(a), the prosecutor seeks to read back in restrictions which were purposely and studiedly eliminated. The language of the amended Rule is clear. The history underscores its plain meaning. As is often true, a thought of Mr. Justice Holmes is apposite: "it is not an adequate discharge of duty for courts to say: We see what you are driving at, but you have not said it, and therefore we shall go on as before." Johnson v. United States, 163 F. 30, 32, 18 L.R.A.,N.S., 1194 (1st Cir. 1908). The case here is *a fortiori*. Those with power to pronounce the Rule have "said it." There is no sound reason for qualifying the message by restrictions they chose to drop.

█ The contrary view, at least as a textual matter, has rested heavily on the point that Rule 16(a) says the court "may" (not "shall") order discovery of the designated materials. See, e. g., United States v. Louis Carreau, Inc., 42 F.R.D. 408, 412 (S.D.N.Y.1967);

United States v. Roberts, 264 F.Supp. 622, 624–25 (S.D.N.Y.1966). But the point, with deference to the authority of those it has impressed, seems unsubstantial. The old Rule also said "may," and then went on to require a "showing" by the defendant (a pattern retained in present subsection (b)). When the latter aspect was excised, it strains words unbearably to say the meaning is unchanged because the former was retained. And the retention of "may" makes perfect sense without any such torture. Discovery under 16(a) is not routine and inescapable. The Rule elsewhere, see subsection (e), reminds us of a potential need for exceptions, protective orders, and the exercise of judgment. All this is taken into account, and the measure of judicial discretion amply respected, if we acknowledge that *the Government* may show particularized justifications for withholding what is otherwise to be given under Rule 16(a). But it is wholly different, and wholly unsupportable, to say the Government may sit back, invoke the old generalities, and conceal from the defendant his own damaging statements and testimony unless the defendant shows some kind of "particularized need" almost never identified by the prosecution because it is almost never possible to imagine, let alone supply.

## II.

While the text and history seem to require the conclusion reached herein, a decent regard for the authority of distinguished colleagues suggests the propriety of considering, and of attempting

---

sentence of which (relevant here) made the deletions and additions indicated, respectively, by lining out and underscoring (33 F.R.D. at 112):

"Upon motion of a defendant at any time after the filing of the indictment or information, the court may order the attorney for the government to permit the defendant to inspect and copy or photograph designated books, papers, documents or tangible objects, ~~obtained from or belonging to the defendant or obtained from others by seizure or by~~ ~~process~~, which are within the possession, custody or control of the government, including written or recorded statements or confessions made by the defendant and the results or reports of physical examinations and scientific tests, experiments and comparisons, upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable."

respectfully to answer, further grounds for their contrary views.

1. To start at the threshold, repeating a thought just mentioned, the demand for a showing of "particularized" need or some special brand of "good cause" has never been satisfactorily defined either by the Government or by the decisions accepting its thesis. It might be supposed that any lawyer conducting a case of any kind would have the most acute, understandable, and justified desire to see potentially damaging statements of his client and, still more urgently, sworn testimony given by his client with only opposing counsel present. In civil cases, while the decisions are not uniform, the apparently predominant view is that "good cause" under Fed.R. Civ.P. 34 (not called for by Criminal Rule 16(a)) is practically self-evident where a party's own statement is sought from adversary hands. See, e. g., New York Central Railroad Company v. Carr, 251 F.2d 433, 435 (4th Cir. 1957); Smith v. Central Linen Service Company, 39 F.R.D. 15, 18 (D.Md.1966); Steelman v. United States Fidelity and Guaranty Company, 35 F.R.D. 120, 121–122 (W.D. Mo.1964); Parla v. Matson Navigation Co., 28 F.R.D. 348, 349 (S.D.N.Y.1961); Cannon v. Aetna Freight Lines, 11 F.R.D. 93, 94 (N.D.Ohio 1950); 4 Moore's Federal Practice ¶ 26.23 [8.–4] (2d ed. 1967); Note, Developments in the Law— Discovery, 74 Harv.L.Rev. 940, 1039 (1961). Similarly, it is routine in civil cases, because the "need" is so patent, that a copy of sworn deposition testimony, given with counsel present, should be available to a party—to correct if it is mistaken, to study for trial, and, not least of all, to assist counsel in preparing. See Fed.R.Civ.P. 30(e) and (f). However much we compartmentalize our minds about criminal, as distinguished from civil, cases, there is no escape from the identity of the two categories in respects of significance here. Perhaps for such reasons—or, more broadly, because of elementary things every trial lawyer knows—it is hardly surprising that an eminent member of this Court, with a distinguished career as a prosecutor included in his long experience, should have dealt brusquely with the Government's insistence that a defendant's confessions should be withheld from him because "no reason was given for the defendant's request." "This circumstance," Judge McGohey held in a brief memorandum, "is not sufficient ground to deny the request, the reason for which seems so obvious." United States v. Greenberg, 67 Cr. 318 (S.D.N.Y., Dec. 21, 1967).

There is, in short, a strong presumption of legitimate adversary "need" whenever discovery is sought of materials like those considered herein. To require a showing of "particularized" need or some unique "cause," apart from the fact that the Rule says nothing about this, leads to the kind of sterile, unedifying, and unreal debates to be found in many files in this building. Placed in a highly unrealistic stance, searching after peculiar and uncommon circumstances, defense counsel are driven to imaginative and unpersuasive arguments because the routine, common, familiar and compelling grounds for their demand have been ruled out in advance. The simple point is that the shoe has been on the wrong foot in such cases. The standard reasons for a defendant's discovery of his own statements and testimony should prevail in every case unless the Government shows some special and good reasons why they should not.

2. The presumption that defendants in criminal cases are commonly disposed to take the witness stand and lie has played a major role in decisions denying discovery of the type sought here. Give him his confession or grand jury testimony, the argument runs, and a defendant is likely to tailor his falsehoods on the stand to avoid inconsistencies with the presumably truthful (and self-incriminating) things he said when, without counsel, he confessed or testified before the grand jury. See, e. g., United States

v. Louis Carreau, Inc., 42 F.R.D. 408, 413–14 (S.D.N.Y.1967). As it has been put here, the argument is stated argumentatively and perhaps less favorably than it is phrased by its proponents. But its net worth is not much greater than the adverse formulation is meant to imply.

To begin with, given the drift of contemporary law on the right to counsel and the privilege against self-incrimination, there is *prima facie* a suspect quality in the theory that the Government should be free to extract from an uncounseled potential defendant, and then withhold from both him and his lawyer, "voluntary" admissions which, when he has counsel, he will want to avoid by committing perjury. Passing that, the point is built one-sidedly of untested folklore. It has been dismissed as an "old hobgoblin" by Mr. Justice Brennan (see 33 F. R.D. at 62), whose authoritative vote for the new Rules is a factor to be reckoned with. It may be, of course, that the "hobgoblin," like other things that alarm us in the night, is simply the heightened after-image of genuine experience which cannot be altogether denied or discounted. But nobody knows the degree of the probability of perjury; certainly, nobody has even a hunch sufficient to override the solid claims of all defendants because some may use a legitimate means of trial preparation (the way some always do) as a device for the subversion of justice.

There are more things wrong with the perjury theory. It overlooks, *inter alia*, that it is a lawyer who ordinarily moves for discovery, representing that he has a proper purpose for what is on its face a responsible professional request. One must, of course, avoid the appearance of naïveté at all costs. But this has not yet been thought to require abandonment of the presumption—without which we are all lost—that the members of our bar behave regularly and refrain from suborning perjury.

When we allow ourselves to indulge that presumption, other excesses in the fear of perjury begin to appear. The defense lawyer, in addition to the obstacles he presents for the prosecutor's progress toward conviction, performs a familiar and important role in the stipulation of indisputable facts and the counseling of guilty pleas where such steps are warranted in the potential interests of his client as well as the community. His service along such lines, no less than others, is likely to be more effective and intelligent when he can know, along with the prosecutor, what things the defendant has confessed or said in the past along with the (possibly different) things the defendant is currently claiming.

If we can (as we can) imagine the case of a truthful defendant, he is entitled to check whether the written or transcribed statement or the grand jury transcript contains errors, or possible errors. Nobody who has read transcripts (or watched the witness say whether he was asked those questions and gave those answers) preserves illusions about even the best of reporters or typists. Apart from this relatively small problem, the witness bent on telling the truth, but knowing the trickery and imperfection of memory, may well be unnerved, or at least disquieted, when he is forbidden to see what he said months or years earlier under trying circumstances. For these and other good reasons, no lawyer or judge could feel comfortable testifying a second time when he was barred from access to an existing transcript of his testimony about the same subjects on an earlier occasion.

The perjury theory is not only partial because it is incomplete; it is also one-sided. The Government's witnesses, knowing they face cross-examination, are regularly and understandably refreshed in their recollection before taking the stand by reading their prior grand jury testimony, reports or statements. This is accepted practice even though the experience underlying our

curbstone judgments includes occasions when prosecution witnesses have placed some values above the search for truth. We tell juries of the interest of witnesses, defendants as well as others. But we also tell them that they may not discount or enhance testimony in advance because of the status or proponent of the witness. Can we in good conscience treat a guess about the likelihood of perjury as justification for ignoring such principles and placing the defense at so stark a disadvantage as that for which the Government argues?

Finally, the worry about perjury, whatever its basis, reflects an exaggerated attribution to defendants of a sinister power to "beat the system." The defendant who plays games with his prior inconsistent statements is not in an enviable plight. Unless we have told ourselves myths about the "great engine" of cross-examination, it serves as a powerful antidote to the recent fabrication, however artfully contrived. Every lawyer knows this. We all know, too, that some will manage by foul measures to conceal the truth and defeat justice. But that is an everyday risk of according to both sides the opportunity to pervert rules of fundamental fairness. It is not a justification for scrapping the rules or weighting them on the side of the prosecution.

The concern about perjury seems in the end to have been overweighed by other things in the judgments of those who prepared and promulgated Rule 16(a). This, in the last analysis, is the critical point. There is no room in the history or language of the Rule for creating a nearly insuperable burden for the defendant on either the perjury theory or any other.

3. More general and pervasive than the perjury theory is the notion that criminal defendants have too many advantages already and that Rule 16(a), whatever it says, must be read restrictively to compensate for the imbalance. This thought, in government briefs and in opinions vindicating those briefs, is commonly though to be buttressed by the eloquence of Judge Learned Hand, who, in 1923, denying a defense motion to inspect *all* of the grand jury minutes, wrote these famous words, United States v. Garsson, 291 F. 646, 649 (S.D.N.Y.):

> " * * * It is said to lie in discretion, and perhaps it does, but no judge of this court has granted it, and I hope none ever will. Under our criminal procedure the accused has every advantage. While the prosecution is held rigidly to the charge, he need not disclose the barest outline of his defense. He is immune from question or comment on his silence; he cannot be convicted when there is the least fair doubt in the minds of any one of the twelve. Why in addition he should in advance have the whole evidence against him to pick over at his leisure, and make his defense, fairly or foully, I have never been able to see. No doubt grand juries err and indictments are calamities to honest men, but we must work with human beings and we can correct such errors only at too large a price. Our dangers do not lie in too little tenderness to the accused. Our procedure has been always haunted by the ghost of the innocent man convicted. It is an unreal dream. What we need to fear is the archaic formalism and the watery sentiment that obstructs, delays, and defeats the prosecution of crime."

It is a rare and temerarious judge, not solely in this Circuit, who would question the correctness of anything Judge Hand wrote.[6] But there is no reason in the

---

6. But compare with the great Judge's views on the advantages of criminal defendants his no less familiar views on the position of litigants generally: "After now some dozen years of experience [i. e., in 1921] I must say that as a litigant I should dread a lawsuit beyond almost anything else short of sickness and death." 3 Lectures on Legal Topics 89, 105, Ass'n of the Bar of the City of N.Y. (1926).

present context even to consider such a venture. The quoted words, in their setting, point to the essentially unchanged federal doctrine that the grand jury's proceedings are in general to be kept secret, from defendants as well as others. Cf. Costello v. United States, 350 U.S. 359, 362, 76 S.Ct. 406, 100 L.Ed. 397 (1956). Neither the words nor the holding they announced suggested valid grounds for concealing from a defendant his own testimony, which was not "secret" for him when he gave it and cannot be withheld from him on any meaningful theory of grand jury secrecy. Moreover, quite apart from the misconceptions which treat secrecy as a supposedly pertinent obstacle when a defendant seeks his own testimony (see "4" infra), we are not free to eviscerate a clear and explicit Rule because of *a priori* judgments that defendants will derive undue benefits from enforcing it as it was written.

4. The subject of grand jury secrecy merits some brief elaboration. As has been mentioned, this was, before July 1, 1956, a frequently mentioned ground for refusing to let a defendant see his own grand jury testimony. See United States v. Di Salvo, 251 F.Supp. 740, 746 (S.D. N.Y.1966); United States v. Johnson, 215 F.Supp. 300, 317 (D.Md.1963); United States v. Kahaner, 203 F.Supp. 78, 86 (S.D.N.Y.1962); United States v. Van Allen, 28 F.R.D. 329, 335 (S.D.N.Y. 1961); United States v. Wortman, 26 F.R.D. 183, 206 (E.D.Ill.1960). In those days, when there was no explicit basis for a contrary ruling, the thought may have been a plausible ground for nondisclosure. But see, e. g., United States v. Rose, 215 F.2d 617, 630 (3d Cir. 1954); United States v. Schoeneman, 203 F. Supp. 840, 841–42 (D.D.C.1962). There is no justification, however, for invoking the same, basically irrelevant generality to avoid the unambiguous mandate of present Rule 16(a).

The familiar reasons for concealment of grand jury minutes have no substantial application where a defendant seeks his own testimony. As they were summarized recently, these reasons are:

"(1) To prevent the accused from escaping before he is indicted and arrested or from tampering with the witnesses against him. (2) To prevent disclosure of derogatory information presented to the grand jury against an accused who has not been indicted. (3) To encourage complainants and witnesses to come before the grand jury and speak freely without fear that their testimony will be made public thereby subjecting them to possible discomfort or retaliation. (4) To encourage the grand jurors to engage in uninhibited investigation and deliberation by barring disclosure of their votes and comments during the proceedings."

Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 405, 79 S.Ct. 1237, 1244, 3 L.Ed.2d 1323 (1959) (Mr. Justice Brennan, dissenting); see also United States v. Amazon Industrial Chemical Corp., 55 F.2d 254, 261 (D.Md.1931); United States v. Wortman, 26 F.R.D. 183, 206 (E.D.Ill.1960). Of those four objectives, the first three are obviously inapposite here; the fourth may on occasion present a slight and easily manageable need for some excisions from the transcript. See Rule 16(e).

There is, in short, no basis in policy or history for frustrating the unequivocal mandate of Rule 16(a) entitling a defendant to see his grand jury testimony unless the Government shows some good and special reason why he should not have it.

For the reasons outlined above, the court has made and will make orders granting discovery herein to each moving defendant of his own confessions, statements and grand jury testimony.